**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 07-cv-01957-LTB

XING LIN,

        Petitioner,

v.

MICHAEL CHERTOFF, Secretary, United States Department of Homeland Security;
PAUL D. CLEMENT, Acting Attorney General;
ROBERT MATHER, District Director, United States Citizenship and Immigration Services;
DOUGLAS MAURER, District Director, United States Immigration and Customs Enforcement;
and any other person having said Petitioner in custody,

        Respondents.

---

## MEMORANDUM OPINION AND ORDER

---

Babcock, J.

        This immigration case is before me on Petitioner, Xing Lin's, Verified Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Writ of Mandamus Pursuant to 28 U.S.C. § 1361 and Complaint for Declaratory and Injunctive Relief attached thereto) **[Docket # 1]**, Respondents' Motion to Dismiss, or, in the Alternative, Motion to Transfer **[Docket # 7]**, Petitioner's Response to Respondents' Motion **[Docket # 8]**, and the parties' Supplemental Briefs **[Docket ## 12, 13]**.  Based on the arguments made on the record during the October 24, 2007, hearing, and the parties' motions, briefs, and the case file, I hereby FIND and ORDER the following.

## I.  BACKGROUND

        The determinative facts do not appear to be disputed.  Petitioner is a Chinese citizen who

was paroled into the United States in 1992.  Petitioner applied for asylum, which was denied in

1994.  Petitioner was then ordered excluded and deported ("1994 order").  Petitioner appealed

the Immigration Court's decision, but his appeal was dismissed.  In August 1996, Petitioner

retained Wei Zhuang to procure an Advance Parole from INS to allow him to visit his mother in

China.  Unbeknownst to Petitioner, Mr. Zhuang was not a licensed attorney.  Petitioner returned

to the United States two months later.

In 2001, Petitioner's employer applied for a labor certification on his behalf, but Petitioner

was denied permanent resident status.  The INS stated it believed it lacked jurisdiction under the

1994 order.  Petitioner was arrested in 2006 and detained for purposes of enforcing the 1994

order.  Petitioner subsequently married his wife, a U.S. citizen with whom he had begotten a

child.  Petitioner's wife filed an I-310 immigration petition on his behalf which was approved on

April 4, 2007.  Petitioner then reapplied for permanent resident status which was denied on July

23, 2007, on the basis that Petitioner made numerous misrepresentations in his previous

applications for asylum and residency.  Petitioner claims his alleged attorney, Mr. Zhuang,

submitted false documents and forged his signature without his knowledge while obtaining the

Advance Parole in 1996.  Petitioner filed a Form I-601 waiver application on August 22, 2007.

The application is still pending resolution.  Petitioner was detained again on September 13, 2007.

Respondents obtained a travel document—expiring on November 22, 2007—allowing Petitioner

to be returned to China.

## II.  PENDING MOTIONS

There are two motions pending in this case:

2

<u>1. Petitioner's Verified Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Writ of Mandamus Pursuant to 28 U.S.C. § 1361 and Complaint for Declaratory and Injunctive Relief attached thereto) [**Docket # 1**]</u>

Petitioner is currently detained at the Park County Jail in Fairplay, Colorado. Petitioner faces imminent and immediate removal from the United States. He claims removal would be error because his departure in August 1996 pursuant to the 1996 Advance Parole terminated the 1994 order.

Petitioner also claims he was denied the opportunity to apply for relief from removal when Respondents refused to process his Form I-601 application for waiver of inadmissibility under 8 U.S.C. § 1182(i). Petitioner alleges Respondents' failure to consider his Form I-601 application violates his due process rights. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."). Petitioner requests I issue a writ of mandamus requiring Respondents hear Petitioner's Form I-601 application for waiver of inadmissibility under 8 U.S.C. § 1182(i) before he is deported. Petitioner claims his removal would cause extreme hardship to his wife and child, both U.S. citizens. Petitioner also claims waiver eligibility based upon his lack of knowledge regarding the alleged misrepresentations made by Mr. Zhuang.

<u>2. Respondents' Motion to Dismiss, or, in the Alternative, Motion to Transfer [**Docket # 7**]</u>

Respondents argue this Court lacks subject matter jurisdiction to consider the merits of Petitioner's challenges. Pursuant to 8 U.S.C. § 1252(a)(5) (a/k/a the "REAL ID Act"), authority to consider a challenge to a final order of removal is within the sole and exclusive jurisdiction of

the circuit courts.  *See Schmitt v. Maurer*, 451 F.3d 1092, 1094 (10th Cir. 2006).

### III.  JURISDICTION UNDER THE REAL ID ACT

Petitioner's petition does not fall entirely under the rubric of the REAL ID Act.  Petitioner challenges not only the present validity of the 1994 order, but also challenges the July 23, 2007, finding of ineligibility vis-à-vis his waiver application.  Jurisdiction over these two distinct issues is discussed in turn.

#### a.  The 1994 order

Neither party cites any authority directly on point with the precise issue presented here—whether a district court has jurisdiction to hear a challenge to the current existence and validity of a removal order that was "executed" pursuant to a voluntary exit and lawful re-entry.  Petitioner argues he is not seeking to challenge the validity of the 1994 order when issued, but instead challenges its present existence.  Petitioner cites two primary cases in support, *Kumarasamy v. Attorney General of United States*, 453 F.3d 169 (3d Cir. 2006); and *Madu v. U.S. Attorney General*, 470 F.3d 1362 (11th Cir. 2006).

These cases are both distinguishable from Petitioner's case, however, because—unlike the situation here—both *Kumarasamy* and *Madu* involved a challenge to the existence of any removal order at all.  Both cases note this is "a different question than whether an extant removal order is lawful."  *Madu*, *supra*, 470 F.3d at 1367 (citing *Kumarasamy*, *supra*, 453 F.3d at 172).  As Petitioner concedes, the original removal order was indeed valid at one time.  *See* Pet. Resp. p. 15 ("In the present matter, Petitioner is not challenging the underlying order of exclusion, rather, he challenges whether it has been executed.").  His challenge argues the 1994 order should no longer be considered extant because it was executed when he legally left and returned to the United

4

States in 1996.  But this challenge is inextricably intertwined with the 1994 order's present legal status, and does not implicate the 1994 order's actual existence.

Congress's clear intent in passing the REAL ID Act was to have all challenges to removal orders heard in a single forum: the courts of appeals.  *See Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (citing H.R. Conf. Rep. No. 109-72, at 174 (2005)).  Thus, the present challenge is subject to the jurisdictional limitation of § 1252(a)(5).  *See Essuman v. Gonzales*, 203 F. App'x 204, 211–12 (10th Cir. 2006) (holding that a challenge to detention that is intertwined with a removal order should be considered as a challenge to the removal order for § 1252(a)(5) jurisdictional purposes).  The other cases Petitioner cites stand largely for the proposition—discussed in Part b, *infra*—that jurisdiction over a habeas petition based on a challenge independent of the removal order remains in the district court.  *See, e.g., Nnadika v. Att'y Gen. of U.S.*, 484 F.3d 626 (3d Cir. 2007).

### b.  The July 23, 2007, finding of ineligibility

While habeas corpus review of a removal order is disallowed entirely under 28 U.S.C. § 2241, review is allowed if it is based upon grounds independent of the removal order.  *See, e.g., Jaber v. Gonzales*, 486 F.3d 223, 230 (6th Cir. 2007); *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 617 (2d Cir. 2007); *Igwebuike v. Caterisano*, 230 F. App'x 278, 281–82 (4th Cir. 2007); *Essuman, supra*, 203 F. App'x at 212 n.8 ("The Conference Report accompanying the Real ID Act makes it clear that § 106 of that Act does not eliminate district court jurisdiction to review habeas 'challenges to detention that are *independent of challenges to removal orders.*'").  Thus, in a so-called "mixed habeas petition," the district court retains jurisdiction over those portions of the habeas challenge that do not address the removal order.  *See Ferry v. Gonzales*,

457 F.3d 1117, 1131 (10th Cir. 2006).

When an alien challenges the Bureau of Citizenship and Immigration Services'

determination that he is ineligible for consideration of an adjustment of status—but such

determination is independent of a removal order—the REAL ID Act should not apply to prohibit

district court jurisdiction. *Igwebuike*, 230 F. App'x at 281. That is precisely Petitioner's posture

here. In denying Petitioner's application, the Field Office Director stated:

> The record shows you have a consistent record of misrepresenting yourself in
> order to gain benefits under the Act. You have misrepresented yourself repeatedly
> over a span of at least fourteen years starting when you applied for asylum up until
> your most recent application for permanent resident status. As a result of your
> misrepresentations, you are not eligible for admission to the United States. Your
> adjustment of status application (Form I-485) has been denied since you do not
> warrant the favorable discretion required under section 245(a) of the Act.

The Field Office Director does not rely upon nor make mention of the 1994 order in her decision.

Petitioner's mandamus request—being based upon objection to the Field Office Director's finding

of statutory ineligibility under 8 U.S.C. § 1182(a)(6)(C) due to misrepresentation over the past

fourteen years—is not so intertwined with the removal order as to be subject to the jurisdictional

limitations of the REAL ID Act. *Igwebuike*, *supra*, 230 F. App'x at 281.

Respondents' argument that 8 U.S.C. § 1252(g) nonetheless prohibits exercising

jurisdiction over this limited inquiry is unavailing in light of the fact that § 1252(g) concerns

orders of removal, not findings of statutory inadmissibility. *See Itaeva v. I.N.S.*, 314 F.3d 1238,

1240–41 (10th Cir. 2003); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525

U.S. 471, 483–84 (1999) (holding—as stated in *Chacon-Corral v. Weber*, 259 F. Supp. 2d 1151,

1155 (D. Colo. 2003)—"§ 1252(g) is to be construed narrowly and bars review only of those

limited categories of discretionary decisions described."); *Igwebuike, supra*, 230 F. App'x at 282

6

(holding judicial review is allowed on "whether [Petitioner] is legally eligible *to be considered for* discretionary relief, specifically, an adjustment of status").

The cases cited by Respondent largely stand for the position that the decision whether or not to initiate removal and deportation proceedings is a discretionary one that cannot be challenged under 1252(g). *See, e.g., Duamutef v. I.N.S.*, 386 F.3d 172 (2d Cir. 2004); *Chapinski v. Ziglar*, 278 F.3d 718 (7th Cir. 2002). That is a different question from the one presented here—whether Respondents must process an application that has been submitted pursuant to removal and deportation proceedings that have already been initiated. *See Chapinski*, 278 F.3d at 721 ("Appellants can have their applications for lawful resident status adjudicated *when and if* removal proceedings are instituted against them by the Immigration Court. Before such proceedings are initiated, however, this matter falls squarely within those discretionary actions excluded from judicial review under section 1252(g)." (emphasis added)). The remaining cases deal with the scope of a circuit court's authority to review removal orders—also a different issue from that presented here. *See, e.g., Bhatt v. Bd. of Immigration Appeals*, 328 F.3d 912 (7th Cir. 2003); *Gomez-Chavez v. Perryman*, 308 F.3d 796 (7th Cir. 2002).

Accordingly, jurisdiction over Petitioner's mandamus request—that I order adjudication of his Form I-601 application for waiver of inadmissibility under 8 U.S.C. § 1182(i)—does not appear to be barred by the REAL ID Act. *See Ferry, supra*, 457 F.3d at 1131; *Madu, supra*, 470 F.3d at 1365.

## IV.  HABEAS CORPUS RELIEF

Petitioner argues that when he voluntarily left the United States in 1996, he executed the 1994 order. I agree. Deportation orders are self-executing orders, not dependent on judicial

7

enforcement. *Escobar v. Att'y Gen.*, 186 F. App'x 300, 301–02 (3d Cir. 2006) (citing *Stone v. I.N.S.*, 514 U.S. 386, 398 (1995)). Thus, when an alien departs the country on his own volition following a deportation order, he "executes the order." *United States v. Marte*, 356 F.3d 1336, 1343 (11th Cir. 2004).

Once Petitioner left the United States in 1996, his removal proceedings were completed and final. *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 675 (5th Cir. 2003); *see also* 8 U.S.C. § 1101(g) ("For the purposes of this chapter any alien ordered deported or removed . . . who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed."); 8 C.F.R. § 241.7 ("Any alien who has departed from the United States while an order of deportation or removal is outstanding shall be considered to have been deported, excluded and deported, or removed, except that an alien who departed before the expiration of the voluntary departure period granted in connection with an alternate order of deportation or removal shall not be considered to be so deported or removed."). Upon his return pursuant to a grant of advance parole, Petitioner's status should have been "dealt with in the same manner as that of any other applicant for admission to the United States." *Ibragimov v. Gonzales*, 476 F.3d 125, 132 (2d Cir. 2007). Nevertheless, as I lack jurisdiction to review challenges to deportation orders, I am unable to consider Petitioner's request for habeas corpus relief.

Having determined I lack jurisdiction to hear Petitioner's challenge related to the 1994 order, authority is ambiguous on the proper course of action. The Tenth Circuit, in an unpublished decision, held that transfer is not explicitly prohibited and a district court may transfer

at its discretion under 28 U.S.C. § 1631. *Rivera-Bottzeck v. Ortiz*, No. 06-1432, 2007 WL 1991143 (10th Cir. 2007). Other courts considering the proper procedure when a district court is presented with a habeas petition filed—like this case—after the passage of the REAL ID Act on May 11, 2005, have held that the district court lacks authority to transfer such cases to the appropriate Circuit and must dismiss. *See, e.g., De Ping Wang, supra*, 484 F.3d at 617; *In re Lawrence*, 448 F. Supp. 2d 572, 574 (S.D.N.Y. 2006).

An additional layer of complexity is added by the fact that 8 U.S.C. § 1252(b)(1) requires a petition for review of a removal order be filed within 30 days of the removal order. Obviously, this petition was not filed within that time period. As Petitioner's challenge does not go to the substance of the 1994 order when issued, however, the 30 day time limit may not be applicable.

This petition appears sufficiently distinct from a simple removal challenge to allow transfer at my discretion. In light of Congress's clear intent to have all challenges to removal orders heard by the courts of appeals, however, I find dismissal to be the better remedy.

## V.  MANDAMUS RELIEF

Having determined that the REAL ID Act does not preclude my jurisdiction to consider Petitioner's request for mandamus relief, I now turn to the merits of the mandamus request.

### A.  Jurisdiction

To establish federal jurisdiction over a mandamus action alleging unreasonable agency delay, Petitioner must establish that (1) his claim is clear and certain; (2) the duty to process his claim is nondiscretionary; and (3) no other remedy is available. *See Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990); *Hernandez-Avalos v. I.N.S.*, 50 F.3d 842, 844 (10th Cir. 1995). The third prong of this test is correctly not disputed. *See Yu v. Brown*, 36 F. Supp. 2d 922, 932

(D.N.M. 1999).

### *1. Clear and certain claim*

Petitioner has a clear and certain claim if he is within the "zone of interest" protected by the underlying statute. *Hernandez-Avalos*, *supra*, 50 F.3d at 846. "The test is not meant to be especially demanding, and there need be no indication of congressional purpose to benefit the would-be plaintiff." *Id.* Petitioner meets the test so long as he is of the class of persons likely to "challenge agency disregard of the law." *Mt. Evans Co. v. Madigan*, 14 F.3d 1444, 1452 (10th Cir. 1994). There is no doubt Petitioner is within this class of persons. *See Yu*, *supra*, 36 F. Supp. 2d at 930 (citing cases).

### *2. Nondiscretionary duty*

District courts may compel a federal agency to perform a duty owed a petitioner only if such duty is nondiscretionary. *See Trackwell v. United States Gov't*, 472 F.3d 1242, 1245 (10th Cir. 2007); 28 U.S.C. § 1361. While it is undisputed that the final determination of Petitioner's application is a discretionary one not subject to judicial review—*see* 8 U.S.C. §§ 1182(i), 1252(g)—the parties dispute whether Respondents have discretion over whether to adjudicate Petitioner's application at all. Respondents claim the absolute discretion given the final determination of Petitioner's application makes the choice whether to even consider his application discretionary. I disagree.

District courts are split on whether mandamus relief is available to compel Respondents to process applications for lawful permanent resident status. Most courts—including the District of Colorado—considering the issue hold that Respondents have "a non-discretionary duty to process applications for [lawful permanent resident] status as well as all other immigration applications."

10

*See*, *e.g.*, *Yu*, *supra*, 36 F. Supp. 2d at 931 (discussing cases); *see also Eldeeb v. Chertoff*, No. 8:07-cv-236-T-17EAJ, 2007 WL 2209231, at *14 (M.D. Fla. July 30, 2007) (holding the fact that *Yu* was decided before the passage of the REAL ID Act did not affect *Yu*'s holding regarding the non-discretionary duty to process applications for lawful permanent resident status); *Wei Tan v. Gonzales*, No. 07-cv-00133-MEH-MJW, 2007 WL 1576108, at *3 (D. Colo. May 30, 2007) ("Because the INA sets forth the standards under which the Attorney General may adjust an alien's status to permanent resident, it follows that neither the Attorney General nor USCIS can refuse to perform this task assigned by Congress."); *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007); *Alkenani v. Barrows*, 356 F. Supp. 2d 652, 656 (N.D. Tex. 2005).

Other courts hold Respondents have discretion to process such applications according to any timetable they deem appropriate. *See*, *e.g.*, *Shen v. Chertoff*, 494 F. Supp. 2d 592, 596 (E.D. Mich. 2007) (holding mandamus relief unavailable because the Attorney General retains discretion over when to hear an application for adjustment of status). The Southern District of New York has taken the unusual position of holding mandamus relief unavailable because the decision to consider an application is discretionary, *Saleh v. Ridge*, 367 F. Supp. 2d 508, 511 (S.D.N.Y. 2005), while also recognizing that mandamus may be available when the delay in considering an application is unreasonable. *See Checknan v. McElroy*, 313 F. Supp. 2d 270, 275 (S.D.N.Y. 2004) ("Therefore, as stated in *Yu v. Brown*, 'the reasonableness of such delays depends on the facts and circumstances of each individual case.'").

I agree with the majority of other courts—and all the courts in this Circuit considering the issue—that whether Respondents have discretion in the ultimate decision to grant lawful permanent resident status is "simply irrelevant" to the question of whether they have discretion to

act on Petitioner's application. *Yu*, *supra*, 36 F. Supp. 2d at 931. The fact that an official's duties entail some discretion does not shield him entirely from mandamus. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1235 (10th Cir. 2005) (citing *Work v. United States ex rel. Rives*, 267 U.S. 175, 177 (1925)). "The language of the statute and these regulations is mandatory not discretionary. Thus, regardless of the ultimate decision," Respondents have a nondiscretionary duty to process Petitioner's application. *Yu,* 36 F. Supp. 2d at 931 (discussing cases).

## 2.  Remedy

Once I am satisfied Petitioner meets the *prima facie* case required for mandamus jurisdiction, I must determine whether the delay in processing his application is unreasonable in light of the relevant facts and circumstances. *See, e.g., Checknan*, *supra*, 313 F. Supp. 2d at 275; *Yu*, *supra*, 36 F. Supp. 2d at 935. When an administrative official "has failed to discharge a duty which Congress intended him to perform, the court *should* compel performance, thus effectuating the congressional purpose." *Forest Guardians v. Babbitt*, 164 F.3d 1261, 1269 (10th Cir. 1998) (citing *Estate of Smith v. Heckler*, 747 F.2d 583, 591 (10th Cir. 1984)). The burden is on Petitioner, however, to show his entitlement to such relief is "clear and indisputable." *Mallard v. United States Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989). The standard is a demanding one. *Id*.

Whether a delay is unreasonable is determined by evaluating the length of time a petitioner's application for adjustment of status has been pending. *See Yu*, *supra*, 36 F. Supp. 2d at 931–32. Petitioner's Form I-601 application was filed on August 22, 2007—less than three months ago. While the harm to Petitioner should he be deported is indeed significant, I cannot find as a matter of law that a three month delay is unreasonable—particularly in light of the fact

that Petitioner may not be removed from the United States until final adjudication of his application. *See Checknan*, *supra*, 313 F. Supp. 2d at 275.

## VI.  STAY ORDER

On September 18, 2007, I ordered Respondents restrained from removing Petitioner pending determination of this matter [**Docket # 4**].  Respondents request I vacate the stay order so Petitioner may be returned to China under travel documents expiring November 22, 2007.  At the October 24, 2007, hearing, Respondents maintained Petitioner would suffer no harm if he was removed prior to the adjudication of his waiver application because he could pursue this matter while in China.  However, if Petitioner is removed he will be deemed to have abandoned his petition and may be barred from reapplying for admission for ten years.  *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II); 8 C.F.R. § 245.2(a)(4).  Contrary to Respondents' position, I find Petitioner would suffer harm if he were removed prior to adjudication of his Form I-601 application for waiver of inadmissibility under 8 U.S.C. § 1182(i).

## VII.  CONCLUSION

Accordingly, IT IS ORDERED that Respondents' Motion to Dismiss, or in the Alternative, Motion to Transfer [**Docket # 7**] is GRANTED, in part, and DENIED, in part, as follows:

1.  Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [**Docket # 1**] is DISMISSED for lack of jurisdiction; and

2.   Petitioner's Petition for a Writ of Mandamus Pursuant to 28 U.S.C. § 1361 directing Respondents to allow Petitioner to have his Form I-601 application for waiver of inadmissibility under 8 U.S.C. § 1182(i) **[Docket # 1]** is DENIED without prejudice, and with jurisdiction over this claim retained.

Respondents are ORDERED restrained from removing Petitioner pending final determination of his Form I-601 application.

Respondents are further ORDERED to file status reports with this Court every thirty days.


Dated: November __14__, 2007.

BY THE COURT:


    s/Lewis T. Babcock

Lewis T. Babcock, Judge